**UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| LUKE MEISSNER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _______________ |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| RMG ACQUISITION CORP., D. JAMES CARPENTER, ROBERT S. MANCINI, CRAIG W. BRODERICK, W. GRANT GREGORY, PHILIP KASSIN, W. THADDEUS MILLER, and STEVEN P. BUFFONE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, Luke Meissner, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against RMG Acquisition Corp. ("RMG" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with RMG, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed merger of RMG Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of RMG, with and into Romeo Systems, Inc. ("Romeo") (the "Proposed Transaction"). Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of

candor/disclosure under state law.

2. On October 5, 2020, RMG entered into an agreement and plan of merger with Romeo (the "Merger Agreement"), whereby Merger Sub will merge with and into Romeo, with Romeo surviving the merger as a wholly-owned subsidiary of RMG. Upon consummation of the Proposed Transaction, RMG shareholders will only own 23.2% of the combined company, while Romeo shareholders will own 64.7% ("Merger Consideration").

3. On November 20, 2020, in order to convince RMG public common shareholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Form S-4/A Registration Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the financial projections for Romeo; (ii) the banker's fees paid to RMG's financial advisors, Morgan Stanley & Co. LLC ("Morgan Stanley") and Nomura Greentech Capital Advisors, LLC ("Nomura"); (iii) whether Morgan Stanley or Nomura had previously been engaged by the Company and/or Romeo; and (iv) information provided in the *Background of the Business Combination* regarding BorgWarner JV's ("BorgWarner") involvement in the Proposed Transaction.

5. The Proposed Transaction is expected to close in the fourth quarter of 2020, so the special meeting of RMG's shareholders to vote on the merger is imminent (the "Shareholder Vote"). Therefore, it is imperative that the material information that has been omitted from the Proxy be disclosed prior to the Shareholder Vote, so RMG's shareholders can properly exercise their corporate voting rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, unless

and until the material information discussed below is disclosed to RMG's public common shareholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, RMG's common stock trades on the New York Stock Exchange ("NYSE"), which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). Further, the Company's headquarters are located in this District at 50 West St., New York, NY 10006. Last, RMG's legal counsel, Latham & Watkins

LLP is located in this District at 885 3rd Ave., New York, NY 10022.

**PARTIES**

10. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of RMG common stock.

11. Defendant RMG is a public company incorporated under the laws of Delaware with principal executive offices located at 50 West St., New York, NY 10006. RMG's common stock is traded on the NYSE under the ticker symbol "RMG."

12. Defendant D. James Carpenter is, and has been at all relevant times, a director of the Company and Chairman of the Board.

13. Defendant Robert S. Mancini is, and has been at all relevant times, a director of the Company and its Chief Executive Officer.

14. Defendant Craig W. Broderick is, and has been at all relevant times, a director of the Company.

15. Defendant W. Grant Gregory is, and has been at all relevant times, a director of the Company.

16. Defendant Philip Kassin is, and has been at all relevant times, a director of the Company and its President.

17. Defendant W. Thaddeus Miller is, and has been at all relevant times, a director of the Company.

18. Defendant Steven P. Buffone is, and has been at all relevant times, a director of the Company.

19. The defendants identified in paragraphs 12 through 18 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with RMG, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

20. RMG is a special purpose acquisition company formed for the purpose of effecting a merger, stock purchase, or similar business combination with one or more businesses. The Company is sponsored by Riverside Management Group and the Management Team of James Carpenter, Robert Mancini, and Philip Kassin. RMG's strategy is to identify and complete its initial business combination with a business in the diversified resources and industrial materials sectors, which includes, among others, the chemicals, energy services and alternatives, environmental services, metals, and power sectors. In February 2019, RMG completed its initial public offering, raising $230 million from investors.

21. Romeo is a private company that manufactures energy storage equipment. The Company provides designing and development of battery packs used in cars, power sport vehicles, motorcycles, trucks, buses, and forklifts. Romeo serves customers worldwide.

22. According to the October 5, 2020, joint press release announcing the Proposed Transaction:

> **ROMEO POWER TECHNOLOGY, LEADING PROVIDER OF BATTERY TECHNOLOGY TO THE COMMERCIAL EV MARKET, TO LIST ON NYSE THROUGH MERGER WITH RMG ACQUISITION CORP.**
>
> **LOS ANGELES, CA / NEW YORK, NY (October 5, 2020)** – Romeo Systems, Inc. ("Romeo Power"), an energy technology company, and RMG Acquisition Corp. ("RMG") (NYSE: RMG), a special purpose acquisition company, today announced a definitive agreement for a business combination that would result in Romeo Power becoming a publicly listed company. Upon closing of the transaction, the combined company will be named Romeo Power, Inc. and is expected to remain listed on the NYSE and trade under the new ticker symbol "RMO".
>
> Romeo Power is an industry leading energy technology company focused on designing and manufacturing lithium-ion battery modules and packs for commercial electric vehicles. Through its industry leading energy dense battery modules and packs, it enables large-scale sustainable transportation by delivering safe, longer lasting batteries with shorter charge times. The company has completed construction and development of a 7 GWh-capable manufacturing facility in Los Angeles, California, with state of the art manufacturing operations designed and scaled for high growth. Romeo Power's core product offering serves the battery electric vehicle (BEV) medium duty short haul and heavy duty long haul trucking markets, as well as specialty trucking and buses. As the era of gas-powered

> vehicles continues to decline, Romeo Power's mission is to be an industry leader in the electrification of the global transportation industry and to be the commercial electric vehicle energy provider of today and tomorrow.
>
> Lionel Selwood Jr., Chief Executive Officer of Romeo Power, commented, "We are thrilled to announce this transaction with RMG, as it allows us to further expand our business and to continue innovating and developing new products. Romeo Power's proprietary battery systems and patented technologies that we have developed over the last four years deliver differentiated energy density, safety, efficiency and cost savings. The need for an economically viable shift toward greener methods of transportation is evident, and we look forward to playing a critical role in the electrification of commercial vehicles globally."
>
> Robert Mancini, Chief Executive Officer of RMG, added, "Since our IPO in early 2019, we have evaluated nearly 150 investment opportunities in search of a company with an industry-leading disruptive technology in the industrial or energy sector. Romeo Power stood out as a differentiated leading battery technology company for commercial electric vehicles, a sector that we think is at an inflection point and poised for unprecedented growth."
>
> Upon completion of the merger, Robert Mancini, along with Philip Kassin, President and Chief Operating Officer of RMG, are expected to join the board of Romeo Power, contributing their significant business, financial, legal and public board experience to the governance and operations of the company.
>
> Romeo Power's energy technology has positioned it to lead the electrification of the global commercial vehicle market. Globally, the total addressable market ("TAM") for commercial vehicles is estimated to be approximately $665 billion with over 17 million vehicles sold annually and steady growth expected to continue as global economic growth fuels the need for more commercial vehicles. In North America and Europe, the TAM is estimated to be approximately $225 billion with over 7 million vehicles sold annually. Romeo Power has a diversified and high quality customer base today that represents an estimated nearly 70% of the North America Class 8 market. The company has varying forms of agreements with customers, enhancing visibility into the company's future growth, including over $300 million of currently contracted revenue.
>
> Romeo Power is de-risking commercialization through its strategic partnerships with global leaders in vehicle component technologies, including BorgWarner, a global tier one automotive supplier. In May 2019, BorgWarner made a $50 million strategic investment in Romeo Power and entered into a joint venture, with a goal of amplifying its growing portfolio of alternative propulsion products for hybrid and electric vehicles. The investment and partnership reflect significant third party validation of Romeo Power's technology, and allow the company to leverage BorgWarner's customer base, supply chain and manufacturing expertise in order to accelerate growth globally and bolster operational execution in a highly capital efficient manner.

(Emphasis in original).

23. The Merger Consideration represents inadequate compensation for RMG shares. Proxy at 1, 16, 81.

24. Therefore, it is imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for

shareholders to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Transaction.

**The Proxy Omits Material Information**

25. On November 20, 2020, Defendants filed a materially incomplete and misleading Proxy with the SEC. The Shareholder Vote on the Proposed Transaction is forthcoming. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction, and thus the Proxy should be amended.

26. First, the Proxy fails to provide critical information regarding the financial projections for Romeo.

27. In particular, the Proxy fails to disclose: Net Income Projections. Defendants elected to summarize financial projections, but they excised and failed to disclose the readily available Net Income Projections. By disclosing certain projections in the Proxy and withholding the Net Income Projections, Defendants render the summary table of projections on page 95 of the Proxy materially incomplete and provide a misleading valuation picture of Romeo. Simply put, net income projections are irreplaceable when it comes to fully, fairly, and accurately understanding a company's projections and value. In fact, throughout the Proxy numerous references to Net Income are made, which highlights its importance.

28. In addition, the Proxy fails to disclose cash flow projections (the "Cash Flow Projections") of Romeo for fiscal years 2020 through 2025. Proxy, 95. It is indisputable that cash flows were an important input in evaluating Romeo because the Proxy provides and discusses the historical data for Romeo's cash flows for fiscal years 2018 through 2020. *Id.* at 33, 203-06.

However, Defendants elected to exclude the Cash Flow Projections from the Proxy and decided only to disclose EBITDA projections, despite the fact that they simultaneously elected to mention Romeo's cash flow throughout the Proxy.

29. The omission of the Cash Flow Projections renders the projections on page 95 of the Proxy incomplete and misleading because, without the Cash Flow Projections, the projection summaries provide a misleading overall valuation picture of Romeo. This is caused by significant differences between Cash Flow Projections—widely recognized as the most important valuation metric when it comes to valuing a company and its stock—and the EBITDA projections that were included in the Proxy.

30. EBITDA projection metrics are not sufficient analogs for Cash Flow Projections. Well settled principles of corporate finance and valuation dictate that the value of companies and their stock should be premised upon the company's projected future cash flows, not projected EBITDA.[1]

31. There are fundamental differences between unlevered free cash flow and EBITDA. EBITDA is not a sufficient alternative to unlevered free cash flows—as Warren Buffet and other financial experts have stated: "References to EBITDA make us shudder. Too many investors focus on earnings before interest, taxes, depreciation, and amortization. That makes sense, only if you think capital expenditures are funded by the tooth fairy." [2] Relying solely on EBITDA to provide a fair summary of a company's financial prospects has numerous pitfalls. EBITDA does not take into account any capital expenditures, working capital requirements, current debt payments, taxes, or

---

[1] Pratt, Shannon. "Net Cash Flow: The Preferred Measure of Return." Cost of Capital. 16. ("Occasionally, we find an analyst treating earnings before interest, taxes, depreciation, and amortization (EBITDA) as if it were free cash flow. This error is not a minor matter…").

[2] Elizabeth MacDonald, *the Ebitda folly*, FORBES (March 17, 2003), http://www.forbes.com/global/2003/0317/024.html.

other fixed costs that are critical to understanding a company's value.[3] As a result of these material differences between EBITDA and unlevered free cash flow, experts recognize unlevered free cash flow as a much more accurate measure when it comes to analyzing the expected performance of a company.

32. In light of these significant differences between the cash flow and the EBITDA figures, the projections on page 95 of the Proxy were materially incomplete and misleading because, by failing to include the Cash Flow Projections, the tables provide a materially incomplete and misleading overall valuation picture of Romeo. Simply put, unlevered free cash flow projections are irreplaceable when it comes to fully, fairly, and properly understanding a company's projections and value.

33. Further, the Proxy should disclose all underlying line items used to calculate Romeo's forecasted EBITDA projections for years 2020 through 2025. Proxy, 95.

34. If a Proxy discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).

35. Unlike poker where a player must conceal his/her unexposed cards, the object of a proxy statement is to put all of one's cards on the table face-up. In this case, only some of the cards were exposed, while others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the

[3] Cody Boyte, *Why EBITDA is Not Cash Flow*, AXIAL FORUM (Nov. 19, 2013), http://www.axial.net/forum/ebitda-cash-flow/.

duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the information related to the projections relied upon by the Board in evaluating Romeo, but have omitted crucial information regarding EBITDA, which renders the Proxy misleading.

36. Second, the Proxy omits whether RMG paid advisory fees to Morgan Stanley and Nomura for their involvement in the Proposed Transaction, and whether a portion of those fees were contingent on consummation of the Proposed Transaction.

37. Third, the Proxy fails to disclose whether Morgan Stanley or Nomura were previously engaged by the Company and/or Romeo, and if so, what the amount of fees received for those prior engagements were.

38. Fourth, throughout the *Background of the Business Combination*, the Proxy continuously mentions BorgWarner's involvement in negotiations with Romeo and RMG regarding the Proposed Transaction. The Proxy states, "parties also discussed the role that BorgWarner would play in Romeo's future operations." Proxy, 89. In fact, RMG took into account BorgWarner's potential involvement when submitting a letter of intent to Romeo predicated on a valuation of Romeo between $1-1.25 billion, if BorgWarner were to "fold into" Romeo. *Id.* at 90. Ultimately, an agreement could not be reached. *Id*. Given BorgWarner's significant influence, the Proxy has not sufficiently disclosed information concerning: (i) what exactly BorgWarner's role would have been after consummation of the Proposed Transaction; and (ii) why an agreement with BorgWarner was unable to be reached.

39. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of

the foregoing material information prior to the upcoming Shareholder Vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

44. Defendants have issued the Proxy with the intention of soliciting the Company's

common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the financial projections for Romeo; (ii) the banker's fees paid to Morgan Stanley and Nomura; (iii) whether Morgan Stanley or Nomura had been previously engaged by the Company and/or Romeo; and (iv) information provided in the *Background of the Business Combination* regarding BorgWarner's involvement in the Proposed Transaction.

45. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

46. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that the Board reviewed the financial data provided to them by Romeo. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to be particularly attentive to the procedures followed in preparing the

Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

47. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

48. RMG is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

49. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

50. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51. The Individual Defendants acted as controlling persons of RMG within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of RMG, and participation in and/or awareness of the Company's operations and/or

intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

54. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT III**
**(Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure)**

58. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

59. By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

60. As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public shareholders.

61. The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

62. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 23, 2020

**MONTEVERDE & ASSOCIATES PC**

By: */s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*